David B. Paradis, OSB No. 853016
Brophy, Schmor, Brophy,
Paradis, Maddox & Weaver, LLP
P.O. Box 128
Medford, OR  97501F
T: (541) 772-7123
F: (541) 772-7149
E: dparadis@brophyllegal.com

*Of Counsel:*
Todd A. Rowden
THOMPSON COBURN LLP
55 E. Monroe Street, 37th Floor
Chicago, IL 60603
ARDC No. 6201929
T:  (312) 346-7500
F:  (312) 580-2201

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## MEDFORD DIVISION

| | |
|---|---|
| **MARIO ROEDERER**, individually, and on behalf of **FLOWJO, LLC**, an Oregon Limited Liability Company, | |
| Plaintiffs, | Case No.: 1:13-cv-01021-CL |
| v. | **FIRST AMENDED COMPLAINT TRADEMARK AND COPYRIGHT INFRINGEMENT,** among other counts. |
| **ADAM TREISTER**, individually, and **TREE STAR, INC.**, an Oregon corporation, | |
| Defendants. | DEMAND FOR JURY TRIAL |

Plaintiff, Mario Roederer, individually ("Roederer"), and on behalf of FlowJo, LLC, a

limited liability company organized in Oregon ("FlowJo") (collectively "Plaintiffs"), by and

through their attorneys, for their First Amended Complaint against Defendants Tree Star, Inc.

("Tree Star"), an Oregon corporation, and Adam Treister ("Treister"), individually (Tree Star

and Treister will collectively be referred to as "Defendants"), states as follows:

## Parties, Jurisdiction and Venue

1.      Roederer is an individual and citizen of Washington D.C.

2.      FlowJo, LLC is a limited liability company organized under the Oregon Limited Liability Company Act and has two members owning equal shares, Dr. Mario Roederer and Adam Treister.  It was managed by Tree Star, Inc., which resigned on July 8, 2013 after Plaintiff Roederer brought this suit.

3.      Treister is an individual and citizen of Ashland, Oregon.

4.      Tree Star is a citizen of Oregon because it is a corporation organized under the laws of Oregon with its principal place of business in Ashland, Oregon.  Tree Star is the manager of FlowJo, LLC, which is an Oregon manager-managed limited liability company with its principal place of business in Ashland, Oregon.

5.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 because there are federal questions relating to the ownership and infringement of intellectual property, including but not limited to 15 U.S.C. §§ 1051 *et seq.* and 17 U.S.C. §§ 100 *et seq.*, and also under 28 U.S.C. § 1332(a)(1) because (i) there is complete diversity of citizenship, and (ii) the amount in controversy, exclusive of interest and costs, exceeds $75,000.00 as against each Defendant.  This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over the remaining counts because the remaining claims are related to this action.

6.      Venue within this judicial district is proper because (i) Section 10.12 of the FlowJo, LLC Operating Agreement mandates that venue be in Oregon, (ii) all Defendants reside in Oregon and one or more of the Defendants reside in this judicial district, (iii) one or more of the Defendants is subject to personal jurisdiction in this judicial district, and (iv) a substantial part of the events giving rise to Roederer's claims identified herein occurred within this judicial district.

## Allegations Common to All Counts

### The 1997 Agreement

7.    On or about June 23, 1997, Roederer and Treister, on behalf of Tree Star, Inc., voluntarily entered into an agreement to facilitate development and marketing of the FlowJo software products (the "1997 Agreement").

8.    Under the 1997 Agreement, gross revenue earned from FlowJo licensing was paid directly to Tree Star.  From approximately June 1997 through November 2007, Tree Star, on a quarterly basis, retained 15% of net profits to cover overhead costs and distributed the remaining net profits to Roederer and Triester on a 50% - 50% basis.

9.    On or about January 18, 2005, FlowJo, a manager-managed limited liability company, was organized under the Oregon Limited Liability Company Act (the "Act").

10.    FlowJo was created to hold all intellectual property, including the original FlowJo patent license, software, trademarks, technical support systems, registered domain names and general "know-how" related to FlowJo software.

### FlowJo, LLC Operating Agreement

11.    On or about February 14, 2006, Roederer and Treister, as the co-founders, owners and only two members of FlowJo, voluntarily executed the FlowJo Operating Agreement.  A true and correct copy of the FlowJo, LLC Operating Agreement is attached hereto as Exhibit A.

12.    Roederer and Treister each hold a 50% membership interest in FlowJo.

13.    Treister, as president and owner of Tree Star, executed the FlowJo Operating Agreement on behalf of Tree Star.

14.    Until recently, Tree Star was the manager of FlowJo.  Treister made all operational and management decisions for Tree Star in its capacity as manager of FlowJo.

15.    Section 4.6.1 of the Operating Agreement provides in relevant part:

The Manager shall not have the authority to, and covenants and agrees that the Manager shall not, do any of the following acts without the unanimous consent of the members:

(a) Knowingly do any act in contravention of this Agreement or without the consent of the members as required by this Agreement;

(d) Possess Company property, or assign rights in specific Company property, for other than a Company purpose;

16.    Pursuant to Section 4.9 of the Operating Agreement, Tree Star's liability cannot be eliminated nor can it be limited in the event of any of the following:

(a) Any breach of the Manager's duty of loyalty to the Company or its member as described in this Agreement;

(b) Acts or omissions not in good faith which involve intentional misconduct or a knowing violation of the law;

(c) Any unlawful distribution under the Act; or

(d) Any transaction from which the Manager derives an improper personal benefit.

17.    Pursuant to Section 4.10 of the Operating Agreement, the compensation paid to Tree Star is to be determined by both Roederer and Treister.  Section 4.10 provides as follows:

The Manager shall be entitled to reasonable compensation for its services, as may be determined from time to time by the members.

Under the Operating Agreement, unanimous consent by both Roederer and Treister is required to adjust compensation to Tree Star.

18.    Pursuant to Article 6 of the Operating Agreement, the gains and losses in FlowJo are to be allocated according to the member's respective ownership interests, which are equal 50% ownership interests held by Roederer and Treister.  Article 6 provides as follows:

All items of income, gain, loss, deduction, and credit shall be allocated among all members in proportion to each member's respective ownership interests. Annual,

monthly, or other interim distributions shall be payable to the members according to the member's respective ownership interest, as determined in the sole discretion of the Manager; provided, however, that no distribution shall render the LLC insolvent or otherwise unable to satisfy debts as they may come due.

19.     The execution of the Operating Agreement effectively superseded the 1997 Agreement.

**Treister's and Tree Star's Unilateral and Unauthorized Distributions to Tree Star**

20.     Treister, as the owner and president of Tree Star, had and continues to have complete operational control of Tree Star.

21.     Since approximately 2005, all gross revenue earned from FlowJo software licensing and sales was paid directly to FlowJo.  As the manager of FlowJo, Tree Star would, in effect, negotiate with the FlowJo for a fixed or percentage fee to cover salaries and expenses related to the operation of FlowJo.

22.     Tree Star retained 15% of net profits and distributed the remaining net profits to Roederer and Triester on a 50% - 50% basis.

23.     The purpose of Tree Star's retention of the 15% of net profits was to cover overhead related costs incurred by Tree Star in the facilitation of development and marketing of FlowJo software.

24.     From approximately 1997 until 2007, Tree Star continued to retain 15% of net profits from the licensing and sales of FlowJo related software for overhead related costs and distribute the remainder of the net profits to Roederer and Triester on a 50% - 50% basis.

25.     In approximately November 2007, Treister and Tree Star unilaterally and without approval of Roederer increased the distribution of FlowJo's net profits from the licensing and sales of FlowJo related software paid to Tree Star from 15% to 50%.  Consequently, this increase in net profits paid to Tree Star resulted in a reduction of net profit distributions to Roederer.

26.     This unilateral mandate that 50% of net profits be paid to Tree Star continued from November 2007 until October 2012.

27.     On several occasions, Roederer objected to the Tree Star's wrongful retention of net profits generated from the licensing and sales of FlowJo software products.

28.     On or about October 2012 through the present, Treister and Tree Star unilaterally and without the consent of Roederer increased the distribution of net profits paid to Tree Star from 50% to 75%. Again, this increase in net profits paid to Tree Star resulted in a reduction of net profit distributions to Roederer.

29.     Any increase in the overhead costs incurred by Tree Star between November 2007 and October 2012 did not require nor did it justify an increase from 15% of net profits to 50% of net profits paid to Tree Star.

30.     Any increase in the overhead costs incurred by Tree Star between October 2012 and the present date does not require nor does it justify an increase from 50% of net profits to 75% of net profits paid to Tree Star.

31.     Treister and Tree Star provided an explanation for their decision to increase distributions of net profits from 15% to 75% between November 2007 and the present date which such explanation was unsatisfactory to Roederer and Roederer did not agree to the increase.

32.     Treister and Tree Star did not have the consent of Roederer for increasing distributions of net profits to Tree Star on flat rate basis or any basis.

33.     At no time did Tree Star and Treister ever obtain Roederer's consent or approval to increase the net profit distributions as compensation to Tree Star and Roederer objected to the same.

34.    Nothing in the Operating Agreement permits Treister or Tree Star to increase the percentage of distributions or compensation to Tree Star without Roederer's consent.

35.    This distribution scheme significantly reduced the net profit distributions payable to Roederer and increased the net profits payable to Tree Star and through Tree Star to Treister. In essence, Tree Star's distribution scheme directly benefitted Tree Star and Treister, personally, because Treister, through Tree Star, retained the increased net profits distributions.

36.    Treister's and Tree Star's intentional diversions of net profits to Tree Star were not in good faith, as the consent of Roederer for such increases was required, but not received.

37.    As the owner of Tree Star, Treister is solely responsible for withholding the net profit distributions owed to Roederer under the terms of the Operating Agreement.

38.    On or about September 2013 through the present, Treister (and Tree Star) unilaterally and without the consent of Roederer increased the distribution of net profits paid to Tree Star from 75% to 100%, effectively cutting all payments to Roeder.

39.    While Treister (and Tree Star) provided an explanation for their decision to retain all revenue from FlowJo, such explanation was and is unsatisfactory to Roederer.  Roederer did not agree to forego his share (*i.e.,* at least 50%) of the net profit.

40.    Neither Treister nor Tree Star had Roederer's consent or approval to increase distributions of net profits to Tree Star.  To the contrary, Roederer objected to the same.

41.    Nothing in the Operating Agreement permits Treister or Tree Star to increase the percentage of distributions or compensation to Tree Star without Roederer's consent.

42.    This distribution scheme reduced the net profit distributions payable to Roederer to zero, and increased the net profits payable to Tree Star and through Tree Star to Treister to 100%.

43.    Treister's and Tree Star's intentional diversions of net profits to Tree Star were not in good faith, as the consent of Roederer for such increases was required, but not received.

44.    Treister is solely responsible for withholding the net profit distributions owed to Roederer under the terms of the Operating Agreement.

**Tree Star's Conversion of FlowJo's Intellectual Property**

45.    Treister through Tree Star and under the FlowJo, LLC Operating Agreement, Exh. A, licensed certain software under the FlowJo trademark going back to at least 1995.

46.    The Operating Agreement gave Tree Star rights to license and manage FlowJo's intellectual property.  Exh. A, § 4.5.  The Operating Agreement did not, however, assign or transfer any intellectual property to Tree Star, nor did it give any ownership of the intellectual property to Tree Star.  Exh. A, § 4.5.

47.    The Operating Agreement was clear that:

"The Company is being formed for the purpose of the development, ownership, marketing and distribution of flow cytometry software."[1] Ex. A ¶ 1.6

48.    Nevertheless, on February 9, 2012, Tree Star filed in its own name a federal trademark application with the USPTO to register the mark FLOWJO for "Computer software platforms for the analysis of Flow Cytometry."  Exh. B.  The USPTO assigned the application Serial No. 85/538,359 and is attached as Exhibit B.

49.    In its application, Tree Star claimed a date of first use of the mark on June 1, 1994, and its first use in commerce on July 1, 1995.  Exh. B.

50.    The USPTO granted registration to Tree Star on September 11, 2012, and issued a Certification of Registration No. 4,205,910 for the FLOWJO mark (hereinafter "FLOWJO Registration").  Exh. B.

---

[1] Flow cytometry software allows for cell or biomarker detection by suspending cells in a stream of fluid and passing them by an electronic detection apparatus.

51.     Tree Star does not and has never owned the FLOWJO trademark.

52.     After this suit was commenced, Tree Star resigned as manager of FlowJo, LLC.

53.     Treister and Tree Star then ceased all payments to FlowJo and Roederer.  Treister did so alleging that he and/or Tree Star owned FlowJo's products and intellectual property.

54.     Tree Star does not own the FlowJo software or trademarks.

55.     On information and belief, Treister and Tree Star, Inc. are attempting to sell FlowJo and Tree Star.  Indeed, Treister and Tree Star engaged an accounting and valuation company to value FlowJo's intellectual property and business, presumably to sell FlowJo while excluding Roederer.

56.     Neither Treister nor Tree Star received consent from Roederer regarding a sale, nor have they sought it.

57.     On information and belief, Treister and Tree Star continue to represent that they have authority to use, sell and license FlowJo intellectual property, and continue to use, sell and/or license FlowJo intellectual property without authority.

<u>**COUNT I**</u>
**(Breach of Contract)**

58.     Plaintiff hereby incorporates by reference in this Paragraph the allegations contained in Paragraphs 1 through 57 of this Complaint.

59.     The Operating Agreement constitutes a valid and binding contract, enforceable against Treister and Tree Star in accordance with the terms set forth in the Operating Agreement.

60.     Roederer and FlowJo have performed all obligations and conditions required of him under the Operating Agreement.

61.     In violation of Section 4.6.1(a) of the Operating Agreement, Treister and Tree Star did not obtain Roederer's consent prior to increasing the profit distributions to Tree Star and

decreasing profit distributions to Roederer.  Treister's and Tree Star's unilateral diversions of profits without the consent of Roederer were in direct contravention of the Operating Agreement.

62.    In violation of Section 4.6.1(d) of the Operating Agreement, Treister and Tree Star assigned rights in specific FlowJo property, namely the profits, to Tree Star for the benefit of itself and Treister, which is a non-company related purpose.  Again, these measures were taken without Roederer's consent.

63.    In violation of Section 4.9 of the Operating Agreement, Treister and Tree Star acted in bad faith by intentionally increasing the distributions of profits to Tree Star without the consent of Roederer.  Such acts resulted in Treister deriving an improper personal benefit.

64.    In violation of Section 4.10 of the Operating Agreement, Treister and Tree Star improperly increased Tree Star's compensation in the form of distributions of the profits without the consent of Roederer.

65.    Upon information and belief, Treister and Tree Star improperly diverted and misappropriated profits owed to Roederer for the benefit of Tree Star and the individual benefit of Treister.

66.    As a direct and proximate result of Treister's and Tree Star's breaches of Sections 4.5(b), 4.6(a), 4.6.1(d), 4.9 and 4.10 of the Operating Agreement, Roederer incurred damages in the form of lost monetary distributions and proceeds that were contractually owed to Roederer.

67.    Tree Star's conduct was willful and calculated to damage and oppress Roederer.  Therefore, punitive damages are appropriate.

68.    Roederer has been damaged and will continue to be damaged by Treister's and Tree Star's breach of the Operating Agreement.

## COUNT II
### (Accounting)

69.    Plaintiff hereby incorporates by reference in this Paragraph the allegations contained in Paragraphs 1 through 68 of this Complaint.

70.    A balance is due to Roederer from Tree Star and Treister for Tree Star's and Treister's misappropriation and diversion of profits owed to Roederer pursuant to his 50% membership interest in FlowJo.

71.    Tree Star and Treister have failed and refused to account for and pay Roederer the full amount due Roederer.  A balance is due to Roederer.

72.    The exact amount due from Tree Star and Treister to Roederer can only be ascertained through an accounting.

73.    An accounting is appropriate in light of the Treister's membership interest in FlowJo and ownership of Tree Star, the manager of FlowJo, because such a complex relationship and financial dealings between the parties are sufficiently complicated to unravel them.

74.    Roederer seeks an order from this Court directing Tree Star and Treister to provide Roederer with an accounting of all amounts paid by, and received from, FlowJo.

75.    Upon conclusion of the accounting, Roederer seeks an Order from this Court ordering payment of the amount due Roederer as reflected in the accounting, plus interest.

## COUNT III
### (Breach of Fiduciary Duty)

76.    Plaintiff hereby incorporates by reference in this Paragraph the allegations contained in Paragraphs 1 through 75 of this Complaint.

77. Pursuant to the Operating Agreement, common law and Section 63.155 of the Act, Tree Star, as the manager of FlowJo, and Adam Treister, as president of Tree Star, owed a fiduciary duty to FlowJo and the members of FlowJo, including Roederer.

78. Tree Star, by unilaterally increasing profit distributions to itself, reduced the profit distributions owed to Roederer and FlowJo under the terms of the Operating Agreement.

79. Tree Star breached its fiduciary duty of loyalty, honesty, objectivity, good faith and fair-dealing owed to FlowJo and Roederer by unilaterally increasing profit distributions to Tree Star and, as direct result, decreasing the profit distributions to FlowJo and Roederer.

80. Treister breached his fiduciary duty of loyalty, honesty, objectivity, good faith and fair-dealing as president of Tree Star owed to FlowJo and Roederer by unilaterally increasing profit distributions to Tree Star and, as direct result, decreasing the profit distributions to FlowJo and Roederer.

81. Tree Star's and Treister's breaches of fiduciary duty directly and proximately caused FlowJo and Roederer to suffer damages in the form of lost monetary distributions and proceeds that were contractually owed to FlowJo and Roederer under the Operating Agreement.

82. Tree Star's and Treister's conduct was willful and calculated to damage and oppress FlowJo and Roederer. Therefore, punitive damages are appropriate.

## COUNT IV
### (Common Law Oppression by Tree Star)

83. Plaintiff hereby incorporates by reference in this Paragraph the allegations contained in Paragraphs 1 through 82 of this Complaint.

84. Tree Star abused its position as manager of FlowJo to increase profit distributions paid to Tree Star while reducing the distributions paid to FlowJo and Roederer.

85.     Tree Star's conduct was and continues to be burdensome, harsh, wrongful and a departure from the standards of fair dealing.

86.     Tree Star's actions prejudiced FlowJo and Roederer and constitute oppression against FlowJo and Roederer.

87.     As a result of Tree Star's oppressive conduct, FlowJo and Roederer suffered and continue to suffer damages in the form of lost monetary distributions and proceeds that were contractually owed to FlowJo and Roederer.

88.     Tree Star's conduct was willful and calculated to damage and oppress FlowJo and Roederer.  Therefore, punitive damages are appropriate.

<u>**COUNT V**</u>
**(Unjust Enrichment)**

89.     Plaintiff hereby incorporates by reference in this Paragraph the allegations contained in Paragraphs 1-10, 20-33, 35-36, 38-40, 42-43, 48-57 of this Complaint.

90.     Tree Star had a duty as manager of FlowJo to equitably distribute profits to FlowJo and Roederer.

91.     Treister had a duty as member of FlowJo and president of Tree Star taking on the role of manager to equitably distribute profits to FlowJo and Roederer.

92.     Tree Star abused its position and breached its duty as manager of FlowJo by not equitably distributing profit distributions to FlowJo and Roederer, and unilaterally increasing distributions to itself.

93.     Treister abused his position and breached its duty as member of FlowJo and president of Tree Star to unjustly enrich himself and Tree Star by increasing profit distributions paid to Tree Star and ultimately himself while reducing the distributions to Roederer.

94.     Roederer had a reasonable expectation for receiving payments from the licensing and sales of FlowJo software and intellectual property.

95.     Tree Star's and Treister's conduct was and continues to be burdensome, harsh, wrongful and a departure from the standards of fair dealing.

96.     Tree Star's actions prejudiced FlowJo and Roederer and constitute unjust enrichment by Tree Star, Inc. and Treister.

97.     As a result of Tree Star's and Treister's unjust enrichment, FlowJo and Roederer suffered and continue to suffer damages in the form of lost monetary distributions and proceeds that were owed to Roederer.

98.     Tree Star's and Treister's conduct was willful and calculated to damage FlowJo and Roederer, and to unjustly enrich Tree Star, Inc. and Treister.  Therefore, punitive damages are appropriate.

<u>COUNT VI</u>
**(Constructive Trust)**

99.     Plaintiff hereby incorporates by reference in this Paragraph the allegations contained in Paragraphs 1-10, 20-33, 35-36, 38-40, 42-43, 48-57 of this Complaint.

100.     Tree Star had a duty as manager of FlowJo to equitably distribute profits to FlowJo and Roederer.

101.     Treister had a duty as member of FlowJo and president of Tree Star taking on the role of manager to equitably distribute profits to FlowJo and Roederer.

102.     Tree Star abused its position and breached its duty as manager of FlowJo by not equitably distributing profit distributions to FlowJo and Roederer, and unilaterally increasing distributions to itself.

103.    Tree Star abused its position and breached its duty as manager of FlowJo by converting FlowJo's intellectual property.

104.    Treister abused his position and breached its duty as member of FlowJo and president of Tree Star to unjustly enrich himself and Tree Star by increasing profit distributions paid to Tree Star and ultimately himself while reducing the distributions to FlowJo and Roederer.

105.    Roederer and Flow had reasonable expectations for receiving payments from the licensing and sales of FlowJo software and intellectual property.

106.    Tree Star's and Treister's conduct was and continues to be burdensome, harsh, wrongful and a departure from the standards of fair dealing.

107.    Tree Star's actions prejudiced FlowJo and Roederer and constitute unjust enrichment by Tree Star, Inc. and Treister.

108.    As a result of Tree Star's and Treister's unjust enrichment, FlowJo and Roederer suffered and continue to suffer damages in the form of lost monetary distributions and proceeds that were owed to FlowJo and Roederer.

109.    Tree Star's and Treister's conduct was willful and calculated to damage FlowJo and Roederer, and to unjustly enrich Tree Star, Inc. and Treister.  Therefore, punitive damages are appropriate.

<u>**COUNT VII**</u>
**(Conversion)**

110.    Plaintiff hereby incorporates by reference in this Paragraph the allegations contained in Paragraphs 1 through 109 of this Complaint.

111.    Tree Star, without authority, took distributions belonging to FlowJo and Roederer.

112.    Tree Star, without authority, took intellectual property, including, but not limited to, the FLOWJO trademark from FlowJo, LLC.

113.    Tree Star's conduct was and continues to be burdensome, harsh, wrongful and a departure from the standards of fair dealing.

114.    Tree Star's actions prejudiced FlowJo and Roederer and constitute conversion against FlowJo and Roederer.

115.    As a result of Tree Star's oppressive conduct, FlowJo and Roederer suffered and continue to suffer damages in the form of lost monetary distributions and proceeds that were contractually owed to FlowJo and Roederer.

116.    Tree Star's conduct was willful and calculated to damage and oppress FlowJo and Roederer.  Therefore, punitive damages are appropriate.

<u>COUNT VIII</u>
**(Declaratory Judgment Regarding Ownership of Intellectual Property by FlowJo, LLC)**

117.    Plaintiff hereby incorporates by reference in this Paragraph the allegations contained in Paragraphs 1 through 116 of this Complaint.

118.    A dispute has arisen regarding the ownership of FlowJo's products and intellectual property, including any software related to flow cytometry systems.

119.    Pursuant to Paragraphs 1.6 and 4.6, among others, of the FlowJo, LLC Operating Agreement, Ex. A, FlowJo, LLC has all ownership to FlowJo's products and intellectual property, including any software related to flow cytometry systems.

120.    Defendants Treister and Tree Star, Inc. have claimed that they, individually or jointly, own FlowJo's products and intellectual property, including any software related to flow cytometry systems.

121.    Defendants Treister and Tree Star have taken affirmative steps to transfer ownership of FlowJo's products and intellectual property, including but not limited to obtaining

a valuation of FlowJo's products and intellectual property and filing for a FlowJo trademark, the FLOWJO mark, in Tree Star's name.

122.    Defendants Treister's and Tree Star's conduct have and continue to harm Roederer.

## COUNT IX
### (Cancellation of Tree Star's Federal Trademark Registration Based on Mistake of Ownership)

123.    Plaintiff hereby incorporates by reference in this Paragraph the allegations contained in Paragraphs 1 through 122 of this Complaint.

124.    Pursuant to 15 U.S.C. § 1119, "[i]n any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action."

125.    Tree Star never owned any rights to the FLOWJO mark and was merely a licensee for FlowJo, LLC.

126.    FlowJo, LLC has always owned all rights to the FLOWJO mark and merely licensed rights to Tree Star, Inc. to act as its licensing agent.

127.    Therefore, Tree Star, Inc. mistakenly filed a trademark application in its name.

## COUNT X
### (Copyright Infringement by Tree Star)

128.    Plaintiff hereby incorporates by reference in this Paragraph the allegations contained in Paragraphs 1 through 127 of this Complaint.

129.    Roederer and FlowJo, LLC own copyrights to computer programs and software relating to flow cytometry software and products, including at least the software subject to copyright registration TX0006443321, attached hereto as Exhibit C.

130.    Tree Star never owned any rights to Roederer's or FlowJo, LLC's copyrights, but was merely a licensee.

131.    Once Tree Star resigned as licensing manager for FlowJo, it relinquished all of its rights to FlowJo intellectual property.

132.    On information and belief, Tree Star, without the permission or consent of FlowJo, LLC, and without authority, is reproducing copies, distributing copies, and preparing derivative works based on the copyrighted works of FlowJo's registered copyrighted works. Tree Star' conduct constitutes direct infringement of FlowJo's exclusive rights under the Copyright Act to reproduce, distribute copies, and prepare derivative works based on the registered copyrighted works.

133.    Tree Star's acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to the rights of FlowJo.

134.    Roederer has been damaged as a direct and proximate result of Tree Star's infringement of FlowJo's copyrights.

## COUNT XI
### (False Designation of Origin and Unfair Competition under15 U.S.C. § 1125(a) by Tree Star)

135.    Plaintiff hereby incorporates by reference in this Paragraph the allegations contained in Paragraphs 1 through 134 of this Complaint.

136.    Pursuant to 15 U.S.C. § 1125(a), § 43(a) of the Lanham Act, for unfair competition, false designation, description, and representation of goods and services as to their nature and origin.

137.    Once Tree Star resigned as licensing manager for FlowJo, it relinquished all of its rights to license or sell FlowJo products and intellectual property.    Tree Star nevertheless continued using the FLOWJO trademark without authorization.

138.    The sale, offer for sale, distribution and/or advertising of products by Tree Star under the FLOWJO mark constitutes unfair competition, false designation of origin and a violation of FlowJo's rights under 15 U.S.C. § 1125(a), § 43(a) of the Lanham Act.    Tree Star's use of the "FLOWJO" mark is unfairly trading on the goodwill symbolized by FlowJo's goods offered under its FLOWJO mark, and is likely to continue to cause, unless enjoined by this Court, confusion, mistake and/or deception of consumers as to the source of Tree Star's goods in light of FlowJo's FLOWJO mark.

139.    FlowJo has been and will continue to be irreparably harmed by Tree Star's unauthorized use of the FLOWJO mark.    The inability of FlowJo to control the goods bearing a mark confusingly similar to FlowJo's FLOWJO mark has caused and will continue to cause, unless enjoined by this Court, injury to the valuable reputation and goodwill FlowJo has developed in its FLOWJO mark.

## COUNT XII
### (Preliminary Injunction)

140.    Plaintiff hereby incorporates by reference in this Paragraph the allegations contained in Paragraphs 1 through 139 of this Complaint.

141.    Defendants Trees Star and Adam Treister knowingly acted in violation of the Operating Agreement by refusing to distribute proceeds from licensing and selling Flow Jo, LLC's intellectual property.

142.    Defendants knowingly acted in violation of the Operating Agreement by converting FlowJo's intellectual property, including but not limited to the FLOWJO trademark.

143.    On information and belief, Defendants are attempting to sell FlowJo, LLC without consulting, let alone receiving consent, from Roederer, a FlowJo, LLC member that has a 50% share.

144.    The aforesaid acts have caused Roederer and FlowJo, LLC irreparable harm.

145.    Upon information and belief, Defendants will continue to engage in these activities and will continue to cause irreparable harm to Roederer and FlowJo, LLC unless a preliminary injunction is issued by the Court.

146.    Roederer and FlowJo, LLC have a right to protect their interests and have no adequate remedy at law.

**WHEREFORE**, plaintiffs pray for the entry of a judgment as follows:

**ON PLAINTIFF'S FIRST CLAIM FOR RELIEF**, Plaintiff Mario Roederer respectfully requests that this Court enter judgment in favor of Roederer and FlowJo, LLC and against Adam Treister and Tree Star, Inc., jointly and severally, granting the following relief: (i) Damages in the amount of all funds, in excess of $250,000.00, improperly diverted and distributed to Tree Star without the consent of Roederer and owed to Roederer under the terms of the Operating Agreement; (ii) Damages in the amount of all funds, in excess of $250,000.00, improperly diverted and distributed to Tree Star and then distributed directly to Treister, as president and owner of Tree Star; (iii) Punitive damages for Tree Star's and Treister's willful breach of the Operating Agreement; (iv) Damages in the amount of Roederer's expenses, reasonable attorneys' fees, other costs incurred and interest on the unpaid but owing funds due Roederer; and (v) Such further relief as is appropriate.

**ON PLAINTIFF'S SECOND CLAIM FOR RELIEF**, Plaintiff Mario Roederer requests this Court enter an Order requiring Defendants Adam Treister and Tree Star, Inc. to provide Roederer and FlowJo, LLC with a complete and detailed accounting that reflects (i) the date and amount of each and every distribution to Tree Star from FlowJo since 1997 and all

supporting documentation; (ii) the actual monthly overhead related expenses incurred by Tree Star in the management of FlowJo since 1997 and all supporting documentation; (iii) all corporate accounting and financial records from Tree Star since 1997 and FlowJo since 2005; and (iv) the date and amount of profits diverted through Tree Star to Treister and all supporting documentation.

**ON PLAINTIFF'S THIRD CLAIM FOR RELIEF**, Plaintiff Mario Roederer requests this Court enter judgment in favor of Roederer and FlowJo, LLC and against Defendants Tree Star, Inc. and Adam Treister finding that (i) Tree Star and Treister, by virtue of his running Tree Star and receiving profits through Tree Star, be ordered to forfeit all compensation paid to them during the time that Tree Star is found to be in breach of its fiduciary duties; (ii) compensatory damages including all monetary distributions and proceeds due to Roederer under the terms of the Operating Agreement be paid to Roederer plus interest; (iii) punitive damages for Tree Star's and Treister's willful conduct be paid to Roederer; (iv) specific performance to transfer Treister's membership shares in FlowJo, LLC to Roederer; (v) Roederer recover his attorney's fees and costs incurred in bringing this action; and (vi) for any further relief as is appropriate.

**ON PLAINTIFF'S FORTH CLAIM FOR RELIEF**, Plaintiff Mario Roederer requests this Court enter judgment in favor of Roederer and FlowJo, LLC and against Defendants Tree Star, Inc. finding that (i) Tree Star and Treister, by virtue of his receiving profits through Tree Star, be ordered to forfeit all compensation paid to them during the time that Tree Star is found to have oppressed Roederer; (ii) compensatory damages including all monetary distributions and proceeds due to Roederer under the terms of the Operating Agreement be paid to Roederer plus interest; (iii) punitive damages for Tree Star's willful conduct be paid to Roederer; (iv) Roederer recover his attorney's fees and costs incurred in bringing this action; and (v) for any further relief as is appropriate.

**ON PLAINTIFF'S FIFTH CLAIM FOR RELIEF**, Plaintiff Mario Roederer requests this Court enter judgment in favor of Roederer and FlowJo, LLC and against Defendants Tree Star, Inc. and Adam Treister finding that (i) Tree Star and Treister, by virtue of his receiving

profits through Tree Star, be ordered to forfeit all compensation paid to them during the time that Tree Star is found to have been unjustly enriched by its breach; (ii) compensatory damages including all monetary distributions and proceeds due to Roederer from the breach of Tree Star's and Treister's duties; (iii) punitive damages for Tree Star's and Treister's willful conduct be paid to Roederer; (iv) Roederer recover his attorney's fees and costs incurred in bringing this action; and (v) for any further relief as is appropriate.

ON PLAINTIFF'S SIXTH CLAIM FOR RELIEF, Plaintiff Mario Roederer requests this Court enter judgment in favor of Roederer and FlowJo, LLC and against Defendants Tree Star, Inc. and Adam Treister finding that (i) Tree Star and Treister, by virtue of his receiving profits through Tree Star, be ordered to forfeit all compensation paid to them during the time that Tree Star is found to have been unjustly enriched by its breach; (ii) compensatory damages including all monetary distributions and proceeds due to Roederer from the breach of Tree Star's and Treister's duties; (iii) specific performance to transfer Treister's membership shares in FlowJo, LLC to Roederer; (iv) punitive damages for Tree Star's and Treister's willful conduct be paid to Roederer; (iv) all future licensing and sales revenue from FlowJo software or intellectual property be paid into a constructive trust during the pendency of this litigation; (v) Roederer recover his attorney's fees and costs incurred in bringing this action; and (vi) for any further relief as is appropriate.

ON PLAINTIFF'S SEVENTH CLAIM FOR RELIEF, Plaintiff Mario Roederer requests this Court enter judgment in favor of Mario Roederer and FlowJo, LLC and against Defendants Tree Star, Inc. finding that (i) Tree Star and Treister, by virtue of his receiving profits through Tree Star, be ordered to forfeit all compensation paid to them during the time that Tree Star is found to converted money and property from FlowJo and Roederer; (ii) compensatory damages including all monetary distributions and proceeds due to Roederer under the terms of the Operating Agreement be paid to Roederer plus interest; (iii) punitive damages for Tree Star's willful conduct be paid to Roederer; (iv) Roederer recover his attorney's fees and costs incurred in bringing this action; and (v) for any further relief as is appropriate.

**ON PLAINTIFF'S EIGHTH CLAIM FOR RELIEF**, Roederer respectfully requests: (i) a declaration that FlowJo, LLC is the sole and exclusive owner of the FlowJo's products and intellectual property, including any software related to flow cytometry systems; (ii) a declaration that Defendants Adam Treister and Tree Star, Inc. do not have any ownership of the FlowJo's products and intellectual property, including any software related to flow cytometry systems; and (iii) a declaration that Defendant Tree Star never owned any rights to the FLOWJO mark and was merely a licensee for FlowJo, LLC.

**ON PLAINTIFF'S NINTH CLAIM FOR RELIEF**, Plaintiff Mario Roederer requests this Court enter judgment in favor of Roederer and FlowJo, LLC and against Treister and Tree Star, Inc. and order that the registration be cancelled pursuant to 15 U.S.C. § 1119.

**ON PLAINTIFF'S TENTH CLAIM FOR RELIEF**, Plaintiff Mario Roederer requests this Court enter judgment in favor of Roederer and FlowJo, LLC and against Treistar and Tree Star, Inc., including but not limited to: and award of the maximum statutory damages pursuant to 17 U.S.C. § 504(c), or alternatively, at FlowJo's election, actual damages pursuant to 17 U.S.C. § 504(b); costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505; and a permanent injunction requiring Tree Star to cease now and forever from infringing on FlowJo's copyrighted works.

**ON PLAINTIFF'S ELEVENTH CLAIM FOR RELIEF**, Plaintiff Mario Roederer requests this Court enter judgment in favor of Roederer and FlowJo, LLC and against Treistar and Tree Star, Inc. including but not limited to: an award that adequately compensates FlowJo for Tree Star's unfair competition and falsely designating the origin of its product; an award of reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a); an injunction against Treistar and Tree Star preventing any further use of the FLOWJO or related marks

**ON PLAINTIFF'S TWELFTH CLAIM FOR RELIEF**, Plaintiff Mario Roederer requests this Court to issue a preliminary injunction to restrain and enjoin the Defendants Trees Star and Adam Treister, directly or indirectly, and all those acting in concert with them, from preventing the provisions of the Operating Agreement from being performed in accordance with

their specific terms and from converting any more of FlowJo's intellectual property.  Defendants

must be enjoined.


Respectfully submitted,

**MARIO ROEDERER**


/s/  Todd A. Rowden
One of His Attorneys

David B. Paradis
Brophy Schmor Brophy Paradis Maddox & Weaver, LLP
201 W. Main Suite 5
Medford, OR  97501
541.772.7123

*Of Counsel:*
Todd A. Rowden
THOMPSON COBURN LLP
55 E. Monroe Street, 37th Floor
Chicago, IL 60603
ARDC No. 6201929
312.346.7500

## CERTIFICATE OF SERVICE

I hereby certify that I served a true copy of the **First Amended Complaint Trademark and Copyright Infringement,** among other counts, via the United States District Court, Electronic Case Filing (ECF) System upon the following parties:

Bernard S. Moore
Frohnmayer, Deatherage, Jamieson,
Moore, Armosino & McGovern, P.C.
moore@fdfirm.com
*Of Attorneys for Defendants*

Dated this 4th day of October, 2013.

/s/ David B. Paradis
David B. Paradis, OSB 853016
Of Attorneys for Plaintiffs