David B. Paradis, OSB No. 853016
Brophy, Schmor, Brophy,
Paradis, Maddox & Weaver, LLP
P.O. Box 128
Medford, OR 97501
T: (541) 772-7123
F: (541) 772-7149
E: dparadis@brophylegal.com


Todd A. Rowden
THOMPSON COBURN LLP
55 E. Monroe Street, 37th Floor
Chicago, IL 60603
ARDC No. 6201929
T: (312) 346-7500
F: (312) 580-2201
E: trowden@thompsoncoburn.com

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### MEDFORD DIVISION

| | |
|---|---|
| **MARIO ROEDERER**, individually, and on behalf of **FLOWJO, LLC**, an Oregon Limited Liability Company, <br><br> Plaintiffs, <br><br> v. <br><br> **ADAM TREISTER**, individually, and **TREE STAR, INC.**, an Oregon corporation, <br><br> Defendants. | Case No.: 1:13-cv-01021-CL <br><br> **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

///

///

///

///

## INTRODUCTION

Plaintiff Mario Roederer, Ph.D. ("Roederer") and defendant Adam Treister ("Treister") formed FlowJo, LLC to develop, market and license flow cytometry software.[1] The FlowJo, LLC Operating Agreement states that all licensing profits were to be split equally between Roederer and Treister, with profits defined as gross revenue minus defendant Tree Star, Inc.'s operating contract (Tree Star is Treister's wholly owned company and previously was manager of FlowJo, LLC). As of 2007, Treister unilaterally set the operating contract share at 50% of gross revenue. In 2012, Treister again unilaterally increased this share of the revenue to 75%, forcing Roederer to institute this litigation. But it turns out there is much more than just profits at stake in this litigation. Roederer recently discovered that Treister applied for and obtained a trademark for "FlowJo" in Tree Star's name in 2012. And just last week, Treister took the position that the current software and other intellectual property of FlowJo, LLC belonged to Tree Star. Treister's revelation is potentially devastating to plaintiffs Roederer and FlowJo, LLC.

To protect the FlowJo intellectual property until this dispute can be resolved, plaintiffs respectfully request a preliminary injunction preventing defendants from:

- taking or claiming as its own any FlowJo intellectual property[2];

- selling or otherwise transferring FlowJo intellectual property;

- representing to any current FlowJo customer that the software is not FlowJo LLC's or otherwise attempting to interfere with current client relationships; and

---

[1]  Flow cytometry is used to analyze samples in biomedical experiments, and it typically refers to measuring cell concentration in a sample.

[2]  FlowJo intellectual property includes any and all trademarks, software and patents relating to flow cytometry that is the subject of the FlowJo Operating Agreement, including but not limited all versions of the software related to flow cytometry.

- transferring or disposing of any income from FlowJo's intellectual property.

Given the nature of the issues in dispute and scope of harm absent an injunction, the evidence in support of an injunction is overwhelming.

There can be no reasonable dispute that FlowJo, LLC is the rightful owner of all FlowJo related intellectual property. This was, in fact, a key goal in establishing the LLC. It is also now undisputed that Tree Star takes the position that some or all of the FlowJo intellectual property belongs to Tree Star. This is evidenced from Tree Star's letter to Roederer of October 11, 2013. Ex. 7. Of course, Tree Star's position fails to account for the clear and unequivocal consequences of the LLC operating agreement. Moreover, Tree Star already has misappropriated a trademark that rightfully should be assigned to FlowJo. That Treister and Tree Star are in breach is inescapable.

Absent Court intervention, Treister and Tree Star have already taken steps that could destroy plaintiffs' business. Defendants may transfer the improperly acquired intellectual property, stripping plaintiffs of their right to conduct business thereunder and potentially putting plaintiffs in the untenable position of being precluded from practicing their own software. In short, plaintiffs' business would be ruined without potential for repair. This is precisely the type of damage an injunction serves to prevent.

## STATEMENT OF FACTS

Dr. Roederer began working on flow cytometry at Carnegie Mellon University in 1983, and developed a commercial product for analyzing data from flow cytometry from 1983 to 1987. *See* Ex. 2, Roederer Affidavit in Support of the Motion for Preliminary Injunction, at ¶ 3. After obtaining his doctorate, he worked as a postdoctoral and research fellow from 1988 to 1999 at Stanford University. *Id.* at ¶ 2. While at Stanford, Roederer developed techniques and software

for more efficient flow cytometry systems that enabled scientists to more rapidly analyze and sort millions of viable cells for research. *Id.* at ¶ 4.

During the course of his software development, Roederer met Adam Treister. *Id.* at ¶ 5. Triester was a fine arts major who later completed an engineering degree. Roederer informed Treister of the issues surrounding flow cytometry and explained the necessary software changes to improve the efficiency of a flow cytometry system. *Id.* After some time, Roederer recruited Treister to help him on further improving flow cytometry software. *Id.* Roederer and Triester called their software "FlowJo." *Id.* at ¶ 6.

***The Parties' Agreements***

On June 23, 1997, Roederer and Treister entered into a formal agreement to develop and market FlowJo software (the "1997 Agreement"). Ex. 3. Treister offered his company, Tree Star, to be the licensing and marketing agent for the software. Ex. 2 at ¶ 9. Under the 1997 Agreement, gross revenue earned from FlowJo licensing was paid directly to Tree Star, where Tree Star retained 15% of net profits to cover overhead costs, and split the remaining revenue between Roederer and Triester on a 50% - 50% basis. Ex. 3 at 1.

In February 2006, the parties further formalized their relationship by creating an Oregon manager-managed limited liability company: FlowJo. Ex. 1. The Operating Agreement states:

- FlowJo owns all intellectual property, including the original FlowJo patent license, software, technical support systems, trademarks, registered domain names and general "know-how" related to flow cytometry systems relating to the FlowJo software (Ex. 1 at §§ 1.10, 4.6.1, 4.7.2, 5.1);

- Roederer and Treister each held a 50% membership interest in FlowJo (Ex. 1 at § 2.1) and were to split all profits equally (Ex. 1 at § 6); and

- Tree Star was the manager and responsible for licensing and sales of FlowJo's products and intellectual property (Ex. 1 §§ 4.1, 4.5).

Treister is the president and owner of Tree Star. Treister thus made all operational and management decisions for Tree Star in its capacity as manager of FlowJo. The Operating Agreement, however, specifically prohibits Tree Star from taking or assigning FlowJo's property without unanimous consent of *both* Treister and Roederer, its only members. *See* Ex. 1 § 4.6.1.

***Treister's and Tree Star's Taking of FlowJo's Revenues***

In approximately November 2007, Treister and Tree Star unilaterally increased Tree Star's operating contract expenses from 15% to 50% of gross revenues without Roederer's prior consent. *See* Ex. 2 at ¶¶ 10, 11. Roederer asked for justifications for setting fees as a fixed percentage of revenue; however, none were provided. *Id.* at ¶ 12.

In October 2012, Treister and Tree Star further escalated their takings, unilaterally increasing Tree Star's distribution from 50% to 75%. *Id.* at ¶ 13. After months of attempting to get an accounting and basis for the increase, Roederer was forced to file this suit.

After this litigation began, Treister and Tree Star have taken ***all*** revenue from FlowJo, and ceased ***all*** payments to Roederer. *Id.* at ¶ 14.

***Treister and Tree Star Usurp FlowJo's Intellectual Property***

Roederer discovered that Treister and Tree Star took affirmative steps to claim FlowJo's intellectual property as their own. For instance, as part of his investigation, Roederer learned that in 2012, Tree Star filed a federal trademark application with the Patent & Trademark Office to register the mark "FlowJo" for "Computer software platforms for the analysis of Flow Cytometry." Ex. 4. Although the Operating Agreement is clear that any such intellectual property is the property of the LLC, Tree Star filed the application listing itself as the owner.[3]

---

[3]    In contrast, the FlowJo software copyright lists FlowJo as the owner and was filed in FlowJo's name. Ex. 8.

*Id*; *see also* Ex. 1 at § 1.10. The FlowJo trademark was issued on September 11, 2012, with Tree Star, not FlowJo listed as the owner. Ex. 4.

Tree Star is jeopardizing the patent rights related to FlowJo's software. Before this lawsuit, FlowJo (through Tree Star) had an exclusive license to U.S. patent No. 6,178,382 from Stanford for many years. That agreement was supplemented and FlowJo retained rights to that patent, and U.S. patent No. 6,954,722. Ex. 5. On August 12, 2013, after this lawsuit was filed, Treister signed an agreement with Stanford terminating Tree Star's responsibility to pay Stanford royalties and keeping a perpetual license in Tree Star's name. Ex. 6.

And also after this suit began, Treister and Tree Star now claim that FlowJo does not own *any* intellectual property related to flow cytometry software (Ex. 7), despite both Treister and Tree Star signing the Operating Agreement giving FlowJo all rights to intellectual property related to flow cytometry. Ex. 1 at §§ 1.6, 1.10, 4.6.1, 4.7.2, 5.1.

## ARGUMENT

At stake is not only licensing revenue, but the entire intellectual portfolio stemming from the parties' decades long relationship. Defendants recently made clear that it is their position that the current software is exclusively and entirely attributable to their efforts and that plaintiffs have no rights to them.[4] Plaintiffs obviously dispute this and will establish as much through this litigation. However, absent an injunction, this may be too little, too late.

---

[4]    After this litigation began, plaintiffs uncovered that defendants improperly filed for the FlowJo trademark in Tree Star's name, rather than FlowJo, LLC. Plaintiffs thus sought defendants agreement to an injunction prohibiting, *inter alia,* any further misappropriation of FlowJo intellectual property. On October 11, 2013, defendants responded claiming on the one hand that they had no intention of "further transfer" of the intellectual property, but on the other hand, asserted that the software constituted "Tree Star's current products." Defendants' position that the software is theirs is troubling and requires an injunction to protect plaintiffs' interests.

A preliminary injunction is appropriate if a movant can establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). Here, the facts and law overwhelming favor an injunction. Plaintiffs can establish each factor in their favor.

I.    **ROEDERER IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIMS.**

At issue are, among other things, whether plaintiffs own and have rights to the FlowJo intellectual property. This includes plaintiffs' claim that defendants have breached the FlowJo, LLC Operating Agreement (Count I) and that FlowJo, not defendants, owns the intellectual property relating to FlowJo (Counts VII and VIII).[5] Although Roederer need only establish likelihood of success for only one of these counts, the evidence overwhelmingly demonstrates that Roederer is likely to succeed on each of these counts even at this early stage.

The breach of contract and ownership of intellectual property claims all stem from the same central question: whether FlowJo, LLC is entitled to the trademarks, software and other intellectual property stemming from the parties' relationship. If so, defendants are in breach as they took as their own at least one FlowJo trademark in 2012 and recently claimed ownership of all FlowJo software, calling it "Tree Star's current products." Ex. 7. It is very likely, if not certain, that plaintiffs will be able to establish a breach of contract and therefore ownership of the FlowJo intellectual property.

---

[5]    Tree Star likely is also infringing FlowJo's trademark and copyright rights (Counts XI and X). Tree Star resigned as manager of FlowJo, LLC on July 8, 2013. Ex. 9. After its resignation, Tree Star relinquished all rights and did not have any authority from FlowJo to use FlowJo's intellectual property. Ex. 9; *see also* Ex. 1, § 4.2. Tree Star, however, appears to be continuing use of FlowJo trademarks and copyrights other than as authorized. In the interest of brevity, Plaintiffs do not address these counts further; however, plaintiffs reserve the right to seek to broaden the preliminary injunction, if necessary, as this litigation progresses.

There is no dispute there is an Operating Agreement between FlowJo, Roederer, Treister and Tree Star. That agreement expressly provides that FlowJo "was being formed for the purpose of the development, ownership, marketing, and distribution of flow cytometry software[,]" and explicitly forbids Tree Star from "possess[ing]" or "assign[ing]" the intellectual property. *See e.g.* Ex. 1 at §§ 1.6, 1.10, 4.5, 4.6.1. It further provides that Tree Star and Triester were obligated to assign any and all intellectual property related to the FlowJo product to FlowJo, LLC. *See e.g.* Ex. 1 at §§ 1.10, 4.6.1, 4.7.2, 5.1.

There is also can be no reasonable dispute that defendants are in breach of this agreement. On February 9, 2012, Tree Star applied for a trademark on the "FlowJo" mark in its own name, not FlowJo's as the contract required. *See* Ex. 4; Ex. 1 at §§ 4.5(b), 4.6.1 (Tree Star shall "prosecute...in [FlowJo's] name" and shall not "possess[]" FlowJo's property). And, defendants now take the position that *all* of the software is their property. Ex. 7. This is a breach of contract.[6] *Slover v. Or. St. Bd. of Clinical Soc. Workers*, 144 Or.App. 565, 570 (1996).

Because of defendants' breach, plaintiffs also will be able to easily establish that FlowJo, LLC, not defendants, should be the rightful owner of the FlowJo intellectual property. This is precisely the type of case that merits an injunction. *Sonista, Inc. v. Hsieh*, 348 F. Supp. 2d 1089, 1093-96 (N.D. Cal. 2004) (granting preliminary injunction and ultimately voiding trademark transfer where transfer was not in a good-faith).

///

///

///

---

[6] Similarly, it is undisputed that defendants have not been providing plaintiffs an equal share of profits as required under the contract. *See e.g.* Ex. 1, §§ 2.1, 6. Defendants have taken the position that plaintiffs are entitled to no proceeds from FlowJo's products or intellectual property. Ex. 7. This too is a breach.

II.    **CONTINUED MISAPPROPRIATION OR TRANSFER OF
       FLOWJO'S INTELLECTUAL PROPERTY WOULD BE DEVASTATING.**

FlowJo is an intellectual property company whose business is licensing and selling trademarked and copyrighted software. Treister's and Tree Star's conduct puts the core of FlowJo's business at risk. Indeed, if the defendants are successful, there would be no business left. Such harm is irreparable and potentially catastrophic.

Any further representation or action by defendants that the FlowJo intellectual property and products are its alone will result in countless forms of harm to plaintiffs. First, it is likely to damage FlowJo goodwill upon resolution of this case if plaintiffs are successful. *Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, C 12-5543 SBA, 2012 WL 5936214, *10 (N.D. Cal. Nov. 27, 2012) ("In the trademark context, threatened loss of prospective customers and goodwill constitute irreparable harm."). Now that this dispute has begun, any further transfer or assignment to defendants alone would not be inadvertent and would put the intellectual property at risk by subjecting it to unenforceability in the future if plaintiffs are correct. 15 U.S.C. § 1064. And, of course, plaintiffs are unable to do business or even have certainty that there will be a business if defendants are able to unilaterally manipulate the intellectual property. *See CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F. Supp. 2d 1051, 1080 (E.D. Cal. 2009), *aff'd,* 348 F. App'x 288 (9th Cir. 2009) ("if another person infringes the marks, that person borrows the owner's reputation, whose quality no longer lies within the owner's control.").

The imminent harm looming here is underscored by the fact that defendants recently obtained a valuation of FlowJo (Ex. 10) and shockingly claim that they now own the FlowJo software. Ex. 7. Roederer understood that the valuation was for the purposes of resolving the

parties differences; however, it seems now that this was part of defendants scheme to take FlowJo's assets and intellectual property and sell it for their benefit.

Irreparable harm is also well recognized as following from the misappropriation of another's trademark. *Sonista*, 348 F. Supp. 2d at 1096; *CytoSport*, 617 F. Supp. 2d at 1080 ("In trademark cases, courts have found irreparable harm in the loss of control of a business' reputation, a loss of trade and loss of goodwill.") (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.,* 920 F.2d 187, 195 (3d Cir. 1990)). "Trademarks serve as the identity of their owners and in them resides the reputation and goodwill of their owners. Thus, if another person infringes the marks, that person borrows the owner's reputation, whose quality no longer lies within the owner's control." *Id.*; *TM Computer Consulting, Inc. v. Apothacare, LLC*, CIV.08-6267-HO, 2008 WL 4238913, *9 (D. Or. Sept. 11, 2008) ("loss of good will that can result from the confusion" over source of products "can not be so easily calculated").

The defendants' seizure of all FlowJo proceeds will also cause irreparable harm because the loss of revenue cuts off funds needed for FlowJo's software and natural business development.  There is also a significant risk that defendants will irreversibly spend FlowJo proceeds thereby eliminating chances that FlowJo recover the income.


## III.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST ALSO FAVOR INJUNCTION.

A preliminary injunction would restore the status quo and prevent further damage to plaintiffs, i.e. it would rebalance the equities. *See Landwatch v. Connaughton*, 905 F. Supp. 2d 1192, 1198 (D. Or. 2012) (granting preliminary injunction "to preserve the status quo and prevent harm to the parties" even though many serious questions were unresolved).  It also

protects third-parties from buying intellectual property from the wrong seller, and from inadvertent infringement.

Defendants are directly benefitting from the unlawful acquisition of plaintiffs' property and revenue. A preliminary injunction would merely return FlowJo's intellectual property, protect its goodwill, and return its revenue from its products. It would return the parties to the status quo.

Moreover, a preliminary injunction would not be a hardship on defendants as they are already prohibited from engaging in these very actions by the Operating Agreement and federal law. *See* Ex. 1 at §§ 1.6, 4.5, 4.6.1; *see also Briggs v. Sullivan*, 886 F.2d 1132, 1143 (9th Cir. 1989) ("if the balance of hardships sufficiently favors the moving party, a preliminary injunction may be awarded even though the questions raised are only 'serious enough to require litigation.'"). In fact, an injunction would merely re-balance the equities and remove the hardship from plaintiffs.

Without a preliminary injunction, consumers may also be confused over the origin of the FlowJo trademark and FlowJo goods. *See CytoSport*, 617 F. Supp. 2d at 1081 ("In the trademark context, courts often define the public interest at stake as the right of the public not to be deceived or confused."). A preliminary injunction would also protect potential buyers from purchasing invalid trademark registrations, and would prevent inadvertent infringement by third-parties who believed they purchased the FlowJo trademarks in good faith. Finally, there are public policy factors which favor protecting contract and property rights and prohibiting companies from unilaterally violating contracts and taking other companies' property.

///

///

## CONCLUSION

For the reasons discussed herein, plaintiffs respectfully request that this Court grant plaintiffs' Motion for Preliminary Injunction and 1) prohibit Tree Star and Treister from converting anymore of FlowJo's intellectual property; 2) order Tree Star and Treister to direct all licensing and sales revenue from FlowJo software and intellectual property into a constructive trust during the pendency of this suit; and 3) prohibit Tree Star and Treister from attempting to sell FlowJo or its intellectual property; and for any additional relief deemed just and equitable.

Dated:  October 16, 2013

THOMPSON COBURN LLP


By: /s/ Todd A. Rowden
      Todd A. Rowden
      Of Attorneys for Plaintiff
      E:  trowden@thompsoncoburn.com


Submitted by:

David B. Paradis
Brophy Schmor Brophy Paradis Maddox & Weaver, LLP
201 W. Main Suite 5
Medford, OR  97501
(541) 772-7123
E: dparadis@brophylegal.com

Todd A. Rowden
THOMPSON COBURN LLP
55 E. Monroe Street, 37th Floor
Chicago, IL 60603
ARDC No. 6201929
(312) 346-7500
E:  trowden@thompsoncoburn.com

## CERTIFICATE OF SERVICE

I hereby certify that on **October 16, 2013**, the foregoing **PLAINTIFFS'
MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** was
filed electronically with the clerk pursuant to the Court's CM/ECF procedures.

All parties in this case are represented by an E-Filer and have consented to service by
electronic means under Fed. R. Civ. P. 5(b)(2)(D).

In addition to service by electronic means, copies of the within **PLAINTIFFS'
MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** was
also served by **mailing** it in a sealed envelope, with postage paid, to the following party at
the address set forth below on the date set forth above.

Bernard S. Moore
Frohnmayer, Deatherage, Jamieson,
Moore, Armosino & McGovern, P.C.
2592 E. Barnett Rd.
Medford, OR 97504
Email:  moore@fdfirm.com
*Of Attorneys for Defendants*

/s/ David B. Paradis
David B. Paradis, OSB #853016
Of Attorneys for Plaintiffs
Brophy, Schmor, Brophy,
Paradis, Maddox & Weaver, LLP
P.O. Box 128
Medford, OR  97501
T: (541) 772-7123
F: (541) 772-7149
E: dparadis@brophylegal.com

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION - 5**