UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| MARIO ROEDERER, individually, and on, behalf of FLOWJO, LLC, an Oregon Limited Liability Company,<br>    PLAINTIFFS,<br>v.<br>ADAM TREISTER, individually, and<br>TREE STAR, INC., an Oregon corporation,<br>    DEFENDANTS. | Case No. 1:13-cv-01021-CL<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |
| ADAM TREISTER, individually, and<br>TREE STAR, INC., an Oregon corporation,<br><br>    COUNTER-CLAIMANTS,<br>v.<br>MARIO ROEDERER, individually,<br>    COUNTER-DEFENDANT. | |

This matter came before the Court on Plaintiffs' motion for preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a). The Court grants Plaintiffs' motion as specified in this Order and enters the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 65(d):

### FINDINGS OF FACT[1]

**The Parties**

1.  Mario Roederer, Ph.D., is an individual and citizen of Bethesda, MD.

2.  Adam Treister is an individual and citizen of Ashland, Oregon.

---

[1] To the extent a finding of fact should be deemed a conclusion of law, it shall be treated as such. Likewise, to the extent a conclusion of law should be deemed a finding of fact, it shall be treated as such.

3.   FlowJo, LLC is a limited liability company organized under the Oregon Limited Liability Company Act. It has two members, Dr. Roederer and Mr. Treister, who each own 50% of the company.

4.   Tree Star, Inc. is a corporation organized under the laws of Oregon with its principal place of business in Ashland, Oregon. Tree Star was the manager of FlowJo, LLC until July 8, 2013.

**Procedural History**

5.   Plaintiffs Roederer and FlowJo, LLC filed this action against Defendants on June 18, 2013, alleging breach of contract, breach of fiduciary duty and other claims. Dkt. 1. Plaintiffs amended their complaint on October 4, 2013 to seek a declaratory judgment of intellectual property ownership and to allege trademark infringement and copyright infringement against Defendants. Dkt. 29.

6.   Plaintiffs moved for a preliminary injunction on October 16, 2013. Dkt. 33. In their motion, Plaintiffs request that this Court preliminarily enjoin Defendants from any attempted transfer of rights to FlowJo software or related intellectual property and order Defendants to direct all licensing and sales revenue from FlowJo software into a constructive trust until further order of this Court. *Id.*

7.   The Court conducted an evidentiary hearing on Plaintiffs' motion on February 27 and 28, 2014. Dkt. 91 & 92. At the hearing, the Court heard testimony from Dr. Mario Roederer on behalf of Plaintiffs, and from Dr. Michael Stadnisky and Ms. Ming Wai Monica Ip on behalf of Defendants. Dkt. 91. The Court also heard argument from counsel for the parties. Dkt. 92.

**The Technology At Issue**

8. The technology at the center of the parties' dispute is flow cytometry software. Flow cytometry is used in biotechnology applications to analyze and identify different cells in a cell sample. Plaintiffs' Ex. 1, at 1, 4. Devices called flow cytometers use lasers to measure certain properties of cell samples. Plfs' Ex. 1, at 4. Flow cytometers are used in HIV disease management, cancer diagnoses, stem cell transplantations for cancer therapy, and immune therapy monitoring. Plfs' Ex. 1, at 2-3.

9. FlowJo software is used to help research scientists and doctors analyze data produced by flow cytometers. Plfs' Ex. 1, at 1, 4. The software has been marketed and sold under the FlowJo name since 1997, and through a website, www.flowjo.com, since 2000. Plfs' Ex. 2; Dkt. 34, Ex. 2, Roederer Aff. ¶ 6; Ex. 14 at 4.

**The Parties' Agreements**

10. On June 23, 1997, Dr. Roederer and Mr. Treister entered into an agreement "to facilitate development and marketing of FlowJo." Plfs' Ex. 2. Pursuant to paragraph 3 of that agreement, net profits from licensing of FlowJo software were to be divided on a 50%-50% basis between Dr. Roederer and Mr. Treister. Plfs' Ex. 2.

11. After the 1997 agreement was entered into, sales of FlowJo software continued to increase. By 2006, the parties sought a more comprehensive agreement to govern the growing company. Plfs' Ex. 4.

12. On February 14, 2006, Dr. Roederer, Mr. Treister and defendant Tree Star entered into an Operating Agreement that governs the relationship between the parties regarding FlowJo software sales. Plfs' Ex. 5. This Operating Agreement specifies that FlowJo is an Oregon manager-managed limited liability company whose sole members are Dr. Roederer and Mr.

Treister, who each have a 50% ownership interest in the company. *Id.*. The Operating Agreement provides that Tree Star acts as FlowJo's manager. *Id.*

13. Section 1.6 of the FlowJo, LLC Operating Agreement provides that FlowJo was "formed for the purpose of the development, ownership, marketing, and distribution of flow cytometry software." Section 1.10 provides that "All real and personal property of the Company [FlowJo, LLC], of any kind or nature, shall be owned by the Company as an entity, and no member shall have any ownership interest in such property in the member's individual name or right, and each member's interest in the Company shall be personal property for all purposes." Section 2.2 provides that each member's interest in "'FlowJo flow cytometry software, and all improvements thereto" is owned by FlowJo, LLC and that "each member shall contribute his or its interest in all rights, licenses, and accounts receivable associated with such property."

14. The Operating Agreement specifies that the members are to split the profits from licensing of FlowJo software in accordance with their respective ownership interests, i.e., equally.

15. Section 4.6.1 of the Operating Agreement provides that:

The Manager shall not have the authority to, and covenants and agrees that the Manager shall not, do any of the following acts without the unanimous consent of the members:

    (a) Knowingly do any act in contravention of this Agreement or without the consent of the members as required by this Agreement;

    (d) Possess Company property, or assign rights in specific Company property, for other than a Company purpose;

16. Section 4.10 of the Operating Agreement provides that:

The Manager shall be entitled to reasonable compensation for its services, as may be determined from time to time by the members.

17. Unanimous consent by Dr. Roederer and Mr. Treister is required to adjust Tree Star's compensation under the Operating Agreement. *Id.* § 4.10.

18. Section 4.6(d) of the Operating Agreement prohibits Tree Star from "possess[ing]" FlowJo property, or "assign[ing]" rights in any FlowJo property.

**Ownership of the FlowJo Software and Related Intellectual Property**

19. As discussed above, Section 2.2 of the Operating Agreement provided that Mr. Treister and Dr. Roederer would contribute their interest in FlowJo flow cytometry software, and all improvements thereto and interest in all rights, licenses, and accounts receivable associated with such property. Plfs' Ex. 5.

20. The FlowJo software was registered with the U.S. Copyright Office on October 23, 2006 as Registration No. TX0006443321. Plfs' Ex. 6. Dr. Roederer is identified as the author of the software. Plfs' Ex. 6. Dr. Roederer testified that he continues to provide updates and bug fixes that enable FlowJo software to run more effectively and be more stable. He also fixes instability issues in the software. Dr. Roederer's testimony was found to be credible.

21. At the preliminary injunction hearing, Dr. Roederer testified that FlowJo, LLC owns the FlowJo software and all related intellectual property.

22. In addition, since 2006, there have been written communications from Mr. Treister specifying that FlowJo, LLC owns the FlowJo software and related intellectual property. Plfs' Ex. 9 & 10.

23. For example, in a June 2006 email to potential buyers of FlowJo, LLC, Mr. Treister stated that "FlowJo LLC owns all brand & copyrights, intellectual property and license to outside IP." Plfs' Ex. 9. In this same email, Mr. Treister stated that "[A]ll intellectual property is the sole property of FlowJo." Plfs' Ex. 9.

24. Mr. Treister also stated in a June 11, 2010 email to potential buyers of FlowJo, LLC, that "FlowJo LLC owns the program code and IP, and is owned 50/50" by Dr. Roederer and himself. Plfs' Ex. 10.

25. At the preliminary injunction hearing, Tree Star's president Dr. Stadnisky testified that Tree Star would be able to continue its business without harm if Tree Star were enjoined from transferring any FlowJo software or related intellectual property.

**Fees to Tree Star Under the 2006 Operating Agreement**

26. Shortly after the creation of FlowJo, LLC, the members agreed to increase Tree Star's compensation from 15% of FlowJo, LLC's gross revenues to $120,000 per month, and they later agreed to increase it to $140,000 per month. Plfs' Ex. 2; Dkt. 34, Ex. 2, Roederer Aff. ¶ 10.

27. In November 2007, Defendants increased Tree Star's compensation to a fixed 50% of FlowJo, LLC revenue received from the licensing of FlowJo software. Dkt. 34, Ex. 2, Roederer Aff. ¶ 11. Plaintiffs dispute agreeing to the 2007 increase. It appears to the Court that in practice and by operation over time, Plaintiffs, at a minimum, probably acquiesced to the 2007 increase.

28. In October 2012, Defendants further increased Tree Star's compensation to 75% of revenue received from licensing of FlowJo software. Dkt. 34, Ex. 2, Roederer Aff. ¶ 13. Plaintiffs dispute agreeing to this increase as well. While the Court finds that Dr. Roederer was willing to consider the increase, if provided supporting documentation of expenses, he did not actually consent or agree to the 2012 increase.

29. Several emails from Mr. Treister introduced at the preliminary injunction hearing discuss Defendants' plan to dilute Dr. Roederer's share in FlowJo, LLC. Plfs' Ex. 16; Plfs' Ex. 17; Plfs' Ex. 18.

30. In February 2013, Mr. Treister wrote to Dr. Roederer stating that because he and Dr. Roederer were "unable to find agreement," FlowJo, LLC needs to be closed down. Plfs' Ex. 18. Mr. Treister also stated that he was "ready to just kill the [FlowJo] and run the business under Tree Star." Plfs' Ex. 18. Mr. Treister also stated that he will "not wire money" to Dr. Roederer "until a new agreement is in place." Plfs' Ex. 18.

31. From 2006 until July 8, 2013, Tree Star served as manager of FlowJo, LLC. Plfs' Ex. 5; Plfs' Ex. 20. On July 8, 2013, Tree Star resigned as manager, and on August 22, 2013 Dr. Roederer assumed the role of manager of FlowJo, LLC. Plfs' Ex. 20; Dkt. 34, Ex. 2, Roederer Aff. at ¶ 15.

32. In addition to the funds that Dr. Roederer alleges were improperly withheld, Dr. Roederer further testified that he has not received any distributions from FlowJo, LLC since August 2013.

33. Tree Star's expert witness at the preliminary injunction hearing, Ms. Ming Wai Monica Ip, introduced a report that Tree Star was able to cover its operational expenses with 50% of revenues from the sales of FlowJo software on average. Defendants' Ex. 112 & 116. Ms. Ip introduced a report stating that, Tree Star's operating costs ranged from a low of 42.7% to a high of 56%, averaging about 49% from 2006 to 2012. Dfs' Ex. 112 & 116. Ms. Ip testified that these operational costs also included $30,000 in massages and additional bonuses.

34. The evidence introduced by Plaintiffs in support of their request for a preliminary injunction indicated that during the period 2006 to 2013, the cost paid by FlowJo to support Tree

Star averaged 49.8% of FlowJo's gross revenue with a minimum of 43.6% and a maximum of 55.6%. Dkt. 89-1, KPMG Aff., Ex. 1.

35.   Defendants' witness, Dr. Stadnisky, testified that Tree Star is currently projected to need 100% of FlowJo's 2014 gross revenue for operating expenses. The Court found the witness to be sincere and credible, but he did not provide any documentation to support his projection.

## CONCLUSIONS OF LAW

1.   This Court has jurisdiction of this action under 28 USC §§ 1331, 1332, 1338 and 2201–2202.

2.   A plaintiff seeking a preliminary injunction must establish four elements: "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Associated Press v. Otter*, 682 F.3d 821, 823-24 (9th Cir. 2012). Having considered the parties' briefing, the evidence and testimony and credibility of the witnesses presented at the preliminary injunction hearing, this Court finds that Plaintiffs have met their burden.

### Likelihood of Success on the Merits

3.   Based on the evidence presented in the preliminary injunction submissions and at the preliminary injunction hearing, and based on the Court's weighing of the credibility of the witnesses who testified at the preliminary injunction hearing, the Court finds Plaintiffs are likely to succeed on the merits of their claim that they own the FlowJo software and other intellectual property that is the subject of their breach of contract, conversion and other claims.

4. First, Plaintiffs allege they own the intellectual property associated with the FlowJo flow cytometry software. In support, Plaintiffs cite the 2006 Operating Agreement which provides that FlowJo, LLC was "formed for the purpose of the development, ownership, marketing, and distribution of flow cytometry software." FlowJo, LLC owns a copyright registration for the FlowJo software, which is presumptive evidence it owns the FlowJo software. *See Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 987 n. 2 (9th Cir. 2009) ("A certificate of registration raises the presumption of copyright validity and ownership."); *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1110 (9th Cir. 1998) ("copyright registration creates a presumption of ownership").

5. Consistent with the copyright registration, Dr. Roederer testified FlowJo, LLC owns the FlowJo software and all related intellectual property, and the Court finds his testimony credible and consistent with the parties' intent. In addition, since 2006, there have been written communications from Mr. Treister acknowledging that FlowJo, LLC owns the FlowJo software and related intellectual property. Based on the Court's observation of the witnesses and their credibility, the Court further finds Plaintiffs are likely to be able to succeed in demonstrating that the parties intended for FlowJo, LLC to own the FlowJo software and related intellectual property.

6. Second, based on the evidence presented in the preliminary injunction submissions and at the preliminary injunction hearing, and based on the Court's weighing of the credibility of the witnesses who testified at the preliminary injunction hearing, the Court finds Plaintiffs are likely to succeed on the merits of their claim that Defendants breached the 2006 Operating Agreement by withholding payments from Dr. Roederer and increasing Tree Star's management fees to 75% and 100% without Dr. Roederer's consent.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 9 -

7. A breach of contract claim requires "the existence of a contract, 'its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff.'" *Moore v. Country Mut. Ins. Co.*, 6:11-CV-06306-AA, 2013 WL 4505892, at *4 (D. Or. Aug. 17, 2013). Based on the testimony at the hearing and the evidence before it, the Court also finds that Plaintiffs will likely establish that the parties entered into the Operating Agreement, and that Dr. Roederer fully performed under the Operating Agreement and did not breach it.

8. The 2006 Operating Agreement requires all FlowJo revenue to be split 50:50 between Dr. Roederer and Mr. Treister. There is no dispute that Dr. Roederer has not been provided any distributions from FlowJo sales since August 2013. Based on the Court's consideration of the evidence presented and the weighing of the credibility of the witnesses, the Court finds Plaintiffs are likely to prevail on their claim that Defendants are in breach of the 2006 Operating Agreement as it relates to revenues payable to Roederer.

9. In addition, in 2011, Tree Star registered the FlowJo trademark with the United States Patent and Trademark Office with Tree Star, not FlowJo, LLC, as the owner. Pursuant to Section 4.5 of the 2006 Operating Agreement, Tree Star was required to "utilize," "prosecute" and "acquisition …Company property" in FlowJo, LLC's name. Based on this evidence, and weighing the credibility of the witnesses and their testimony, the Court finds Plaintiffs are likely to prevail on their claim that Defendants breached the 2006 Operating Agreement based on Tree Star federally registering the FlowJo trademark as a mark owned by Tree Star.

**Irreparable Harm**

10. A preliminary injunction should issue when necessary to prevent irreparable harm pending trial on the merits. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th

Cir. 2011); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) (threatened loss of prospective customers or goodwill evidences a finding of irreparable harm; affirming grant of preliminary injunction); *Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, C 12-5543 SBA, 2012 WL 5936214, at *10 (N.D. Cal. Nov. 27, 2012) ("threatened loss of prospective customers and goodwill constitute irreparable harm."); *see also TM Computer Consulting, Inc. v. Apothacare, LLC*, CIV. 08-6267-HO, 2008 WL 4238913, at *9 (D. Or. Sept. 11, 2008); *.Sonista, Inc. v. Hsieh*, 348 F. Supp. 2d 1089, 1096 (N.D. Cal. 2004); *CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F. Supp. 2d 1051, 1080 (E.D. Cal. 2009) *aff'd*, 348 F. App'x 288 (9th Cir. 2009). Based on the evidence presented in the preliminary injunction submissions and at the preliminary injunction hearing, and based on the Court's weighing of the credibility of the witnesses who testified at the preliminary injunction hearing, the Court finds that Plaintiffs are likely to suffer irreparable harm if Defendants are not enjoined.

11. The Court finds that because FlowJo, LLC owns FlowJo software and its business is licensing FlowJo software, it would be irreparably harmed if Defendants sold or transferred the software or related intellectual property to a different entity. *Alexander & Alexander Benefits Servs., Inc. v. Benefit Brokers & Consultants, Inc.*, 756 F. Supp. 1408, 1415 (D. Or. 1991) (taking away company's ability to fairly compete by misappropriating its intellectual property is irreparable harm); *Textile Unlimited, Inc. v. A..BMH & Co., Inc.*, 240 F.3d 781, 786 (9th Cir. 2001) (A preliminary injunction is a device for "preventing the irreparable loss of rights before judgment."). If Tree Star or Mr. Treister sell or transfer FlowJo, LLC's intellectual property, Plaintiffs could be deprived of ownership rights and may not be able to undo a transfer.

12. The Court also finds that Plaintiffs are likely to suffer irreparable harm if Tree Star continues to refuse to post software updates to FlowJo software to FlowJo's website,

www.flowjo.com. Dr. Roederer testified that customers would be irreparably harmed by not having updates and bug fixes to FlowJo software, and that Defendants are potentially compromising ongoing research and treatments. Dr. Roederer further testified that customers know FlowJo and that it is a well-respected and highly used product with significant use and esteem in the field. Dr. Roederer testified that Tree Star's refusal to post software updates could adversely impact FlowJo, LLC's and its customers' clients. The Court finds Dr. Roederer's testimony credible and finds Tree Star's refusal to post software updates is another independent basis for finding irreparable harm. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm.").

13.     The question of irreparable harm based on 100% of sales revenue from FlowJo software being directed to Tree Star, Inc. without any distribution to Dr. Roederer, is a closer call. Generally, "economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). However, "[a] Court has the power to issue a preliminary injunction in order to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies." *Dargan v. Ingram*, 73 Fed. R. Serv. 3d 883 (W.D. Wash. 2009) citing *Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). To obtain preliminary relief, plaintiff must establish "not only that [he] is likely to become entitled to the encumbered funds upon final judgment, but also that without the preliminary injunction, the plaintiff will probably be unable to recover those funds." *Id.* (internal citation omitted). As stated above, the Court finds that Plaintiffs are likely to succeed on the merits of their claim that Dr. Roederer is entitled to at least 25% of the revenue from FlowJo

software, or half of the 50% distribution that became standard practice in 2007. Additionally, there was testimony from Dr. Stadnisky that Tree Star, Inc. is currently using 100% of the revenue from FlowJo software for operating expenses. Although the Court found him to be credible, he did not provide the Court with any financial statements or account documentation to explain or justify the current expenses. He also did not provide any evidence that Tree Star would be able to satisfy a money judgment should one be rendered in this case, as the Court finds likely. Therefore, Plaintiffs are likely to suffer irreparable harm on this issue as well.

**The Balance of Hardships**

14. "[I]f the balance of hardships sufficiently favors the moving party, a preliminary injunction may be awarded even though the questions raised are only 'serious enough to require litigation." *Landwatch v. Connaughton*, 905 F. Supp. 2d 1192, 1198 (D. Or. 2012) (granting preliminary injunction "to preserve the status quo and prevent harm to the parties"); *Textile Unlimited, Inc.*, 240 F.3d at 786 (A preliminary injunction is "a device for preserving the status quo"). Based on the evidence presented in the preliminary injunction submissions and at the preliminary injunction hearing, and based on the Court's weighing of the credibility of the witnesses who testified at the preliminary injunction hearing, the Court finds the balance of hardships tips in Plaintiffs' favor. As explained above, the Court finds that Plaintiffs would be irreparably harmed absent a preliminary injunction. Tree Star's president, Dr. Stadnisky, also testified at the preliminary injunction hearing that Tree Star would be able to continue its business without harm if Tree Star were enjoined from transferring any FlowJo software or related intellectual property. Defendants claim that putting any amount of FlowJo revenue in escrow will "decimate" Tree Star's business because its current operating expenses equal 100% of the software's revenue. However, Defendants do not dispute that it has successfully operated

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 13 -

with only 50% of the revenue stream since 2007, and with 75% since 2012. Other than the testimony of Dr. Stadnisky, no financial statements or account documentation were provided to explain or justify the sudden increase in operating expenses. Accordingly, the Court finds that the preliminary relief Plaintiffs request will not cause Defendants to suffer significant hardship. Additionally, a process by which Defendants can petition the Court to change the terms of the preliminary injunction, by offering proof of the necessity of operating expenses in excess of 75%, will be included in this Order to alleviate the potential hardship Defendants may experience.

**Public Interest**

15.   Based on the evidence presented in the preliminary injunction submissions and at the preliminary injunction hearing, and based on the Court's weighing of the credibility of the witnesses who testified at the preliminary injunction hearing, the Court finds that granting a preliminary injunction is in the public interest.

16.   As an initial matter, because the parties dispute ownership of the FlowJo intellectual property, an injunction prevents the transfer of ownership in the event Defendants are not the rightful or sole owners of the intellectual property. *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) (affirming preliminary injunction and stating that "the public has a compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating" programming.). There also is a general public policy interest against misappropriating intellectual property. *EyePartner, Inc. v. Kor Media Group LLC*, 2013 WL 3733434, at *5 (S.D. Fla. 2013) (granting preliminary injunction stating that "preliminary injunction serves the 'public interest because the public interest lies with protecting the rights of copyright owners.'"); *Signazon Corp. v. Nickelson*, CIV.A. 13-11190-RGS, 2013

WL 3990651, at *2 (D. Mass. Aug. 6, 2013) (public interest in protecting ownership rights in intellectual property).

17.  Further, as the evidence introduced in the preliminary injunction submissions and at the preliminary injunction hearing indicates, flow cytometry is an important technology that aides thousands of doctors and research scientists in their research, treatments for patients, and helps find cures for some of the world's harshest and detrimental diseases. It is used in cancer, flu, HIV and various immuno disease research. It aides in current and ongoing therapies. The Court finds that if the software used for this research does not function properly, it could have serious adverse effects on public health. By blocking updates and bug fixes to FlowJo software, Defendants are potentially compromising ongoing research and treatments.

**Bond**

18.  "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." F.R.C.P. 65(c). The amount of security is within the Court's discretion and turns on the facts of a particular case. *See Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999).

19.  In this instance, Plaintiffs' desire to protect the status quo, *i.e.,* prevent the transfer of the underlying intellectual property and licensing revenue, poses little financial risk or hardship to Defendants. Tree Star's president Dr. Stadnisky testified at the preliminary injunction hearing that Tree Star would be able to continue its business without harm if Tree Star were enjoined from transferring any FlowJo software or related intellectual property. A lower bond also is appropriate because the money from FlowJo product sales is to be directed to an escrow account.

20.     Based on the evidence presented in the preliminary injunction submissions and at the preliminary injunction hearing, and weighing the credibility of the witnesses who testified at the preliminary injunction hearing, the Court finds a *de minimus* bond is sufficient here. Based on the Court's findings on Plaintiffs' likelihood of success on the merits, irreparable harm, balance of hardships and public interest, and considering the totality of the circumstances, the Court finds that a bond in the amount of ten thousand dollars ($10,000.00) is satisfactory. *See Barahona-Gomez v. Reno*, 167 F.3d at 1237 (The district court did not err in requiring the plaintiffs to post a nominal bond of $1,000 pursuant to Fed.R.Civ.P. 65(c)); *Evergreen Intern. Airlines, Inc. v. Pan American World Airways, Inc.*, 46 F.3d 1140, 1995 WL 43600, at *4 (9th Cir. 1995) (rejecting Pan Am's argument that the injunctions are void because the court failed to require Evergreen to post bond); *Just Film, Inc. v. Merchant Services, Inc.*, 474 F. App'x. 493, 495 (9th Cir. 2012) (no bond).

THEREFORE, Plaintiffs' Motion for a Preliminary Injunction is GRANTED.

It is ORDERED that:

1.     Defendants shall not transfer any intellectual property and assets in any way related to the allegations made in this case and shall operate Defendant Tree Star, Inc. in the ordinary course of business and do nothing to transfer, sell, harm, diminish or dilute the value of the intellectual property and assets referenced;

2.     Defendants are directed to post all software updates to FlowJo's website, www.flowjo.com;

3.     Defendants are prohibited from taking or claiming ownership of any of FlowJo's intellectual property;

4. Defendants are prohibited from representing to any current or potential FlowJo customer that the software is not owned by FlowJo, LLC or otherwise attempt to interfere with current client relationships;

5. Defendants shall direct all revenues from FlowJo software business into FlowJo, LLC's operating account;

6. Defendants are permitted to be paid up to 75% of revenues from sales of FlowJo's products to account for their legitimate business operating expenses. The remaining revenues will be directed into a trust account and held in escrow until a judgment is rendered in this case. Defendants shall be paid monthly from FlowJo, LLC accounts for their legitimate business operating expenses, and shall submit detailed expense reports to the Court;

7. If Defendants claim their legitimate business operating expenses exceed 75% of revenue from FlowJo software sales, Defendants shall submit detailed expense reports, all supporting documentation, and reasons thereto to the Court regarding why an alteration to the preliminary injunction payments is necessary to maintain business operations. Dr. Roederer has 30 days to consent or object, in writing to the Court, to Defendants' proposed increases to alter the preliminary injunction payments. If agreement cannot be reached for altering the preliminary injunction payments after 14 days from objection, the Court will evaluate the need to alter the preliminary injunction payments;

8. A special master or expert may be employed by the Court to oversee compliance with the financial distributions in this Order and to make recommendations to the Court on the parties' disputes regarding business operating expenses. The parties will share this expense; and

9. Plaintiffs are required to post a ten thousand dollar ($10,000.00) bond to be held for the duration of the preliminary injunction.

It is so ORDERED and DATED this 5 day of March, 2014.

MARK D. CLARKE
United States Magistrate Judge